UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| OSRAM SYLVANIA, INC., | ) | CASE NO. CV 09-8748-R |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS OF FACT AND CONCLUSIONS |
| | ) | OF LAW |
| AMERICAN INDUCTION TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On September 20-22, 2011, the Court held a bench trial on the single issue of whether the patent-in-suit, U.S. Patent No. 5,834,905 ("the '905 patent"), is unenforceable due to alleged inequitable conduct before the United States Patent and Trademark Office ("PTO"). Upon the close of evidence from the defendant and counterclaim-plaintiff, American Induction Technologies, Inc. ("AITI"), plaintiff and counterclaim-defendant, Osram Sylvania, Inc. ("OSI"), moved for Judgment on Partial Findings pursuant to Federal Rule of Civil Procedure 52(c). This Court, having considered the testimony, both live and by deposition, the documentary evidence, the applicable law, and the arguments of counsel, and having GRANTED OSI's Rule 52(c) motion, hereby makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a).

As set forth herein, the Court finds for plaintiff and counterclaim-defendant Osram Sylvania, Inc. ("OSI"), and against defendant and counterclaim-plaintiff AITI on AITI's Third Claim for Relief, and concludes that no inequitable conduct occurred during prosecution of the '905 patent and that the '905 patent is not unenforceable due to inequitable conduct.

# I.  FINDINGS OF FACT

## A. Parties and Lawsuit

1. On March 27, 1996, OSI filed U.S. Patent Application No. 624,043 ("the '043 application" or "the '905 patent application") naming Valery Godyak, Benjamin Alexandrovich, Robert Piejak, and Eugene Statnic as inventors (collectively "the Inventors").

2. The '043 application issued on November 10, 1998 as U.S. Patent No. 5,834,905 ("the '905 patent"), entitled "High Intensity Electrodeless Low Pressure Light Source Driven by a Transformer Core Arrangement." OSI is the owner by assignment of the '905 patent.

3. On November 30, 2009, OSI brought Civil Action No. 2:09-cv-08748-RVBK against AITI, asserting infringement of the '905 patent arising out of AITI's importation, manufacture, use and/or sale of certain electrodeless induction lamps.

4. On October 5, 2010, AITI asserted the defense and counterclaim that the Inventors of the '905 patent committed inequitable conduct during prosecution of the '905 patent based on various alleged acts and omissions.

5. On February 14, 2011, the Court entered an order granting AITI's motion for summary judgment that Claim 32 of the '905 patent is invalid. On March 21, 2011, the Court found that the remaining independent claims of the '905 patent also were invalid. OSI subsequently granted AITI a covenant not to sue with regard to the dependent claims.

6. At trial, AITI attempted to prove that the Inventors committed inequitable conduct by withholding three articles from the PTO during prosecution of the application that lead to the '905 patent,[1] namely:

_____

[1] In its opening statement, AITI also referred to other allegedly wrongfully withheld items of prior art, including an article by Fred Whitney entitled "Measurements of Inductively-Coupled RF Fluorescent Lamp Lumen Properties," certain pages of a

2

i) a 1992 article authored by three of the Inventors entitled "A Simple Analysis of an Inductive RF Discharge" (hereinafter "the Simple Analysis Article"),

ii) a 1993 article authored by three of the Inventors entitled "Electrical and Light Characteristics of RF-Inductive Fluorescent Lamps" (hereinafter "the Electrical and Light Characteristics article"), and

iii) a 1993 article by D.O. Wharmby entitled "Electrodeless Lamps for Lighting: a Review" (hereinafter "the Wharmby article" or "Wharmby").

7. AITI also argued, in its opening statement and in its opposition to OSI's Rule 52(c) motion, that the Inventors committed inequitable conduct by allegedly withholding certain information relating to a product known as the Philips QL lamp ("the Philips QL" or "QL"), by giving the '905 patent a purportedly deceptive title, by making allegedly misleading statements to the PTO during prosecution, by submitting a so-called "straw man" prior art reference for the purpose of misleading the PTO, and by concealing an alleged best mode of the invention disclosed and claimed in the '905 patent.

**B. The Technology at Issue**

8. The '905 patent is directed to a high intensity, electrodeless low pressure light source driven by a radio frequency ("RF") power source and a transformer core arrangement, and which yields a highly efficient and very long-lasting light source.

9. The lamps claimed in the '905 patent are of closed-loop tubular, external transformer core topology.

---

Russian text book called "Discharge Light Sources" by G.N Rokhlin, and U.S. Patent No. 5,200,672 to Sheynberg, et al. These alleged items of prior art were not introduced into evidence as exhibits at trial, and the only evidence regarding these items provided by AITI were portions of deposition testimony of Inventors Godyak and Alexandrovitch. The Court finds this deposition testimony to be insufficient to prove inequitable conduct by clear and convincing evidence. At a minimum, this deposition testimony falls far short of meeting the *Therasense* standard for proof of deliberate intent to deceive the patent office. Furthermore, Dr. Piejak was never asked about these references at all, and AITI did not articulate any specific acts of inequitable conduct based upon these references in its opposition to OSI's Rule 52(c) motion. (*See* Trial Tr., 9/22/11, 5:20-6:1).  The Court therefore finds that AITI has failed to prove, by clear and convincing evidence, that any of the Inventors committed inequitable conduct based on the alleged withholding of these references.

10. The transformer cores of the '905 patent preferably have a toroidal configuration and are preferably comprised of a ferrite material.

11. The lamps of the '905 patent operate at a preferred frequency range of 50 kHz to 3 MHz, and even more preferably at a frequency range of 100 kHz to 400 kHz.

**C. Prosecution of the '905 Patent**

12. One of the Inventors, Dr. Robert Piejak, testified live at trial.

13. Among the Inventors, Dr. Robert Piejak assumed the lead role during prosecution of the '905 patent. His responsibilities included preparing the initial written disclosure of the invention, identifying what he believed to be the material prior art for submission to the PTO, and interacting with OSI's in-house and outside patent counsel.

14. Dr. Piejak testified that he and at least two of the other Inventors had worked together at OSI for several years before filing for the '905 patent, and that they had applied for and were co-inventors on some earlier patents. Dr. Piejak testified to the process that the Inventors followed in applying for those earlier patents, including that he took a lead role within the group of inventors and had been responsible for preparing the initial draft application, interacting with the attorneys, and considering what prior art was material and should be submitted.

15. Dr. Piejak testified regarding the process that he and the other Inventors followed when preparing the '905 patent application and determining which prior art was material to the '905 patent. Dr. Piejak testified that they employed the same approach as they had in the past when applying for patents. Dr. Piejak testified as to the consideration he gave regarding which prior art would be material to the patentability of the '905 patent. The Court credits Dr. Piejak's testimony in this regard.

16. The Court found Dr. Piejak to be credible, composed, and forthcoming at all times during his testimony.

17. During prosecution of the '905 patent, the Inventors submitted multiple prior art references.

18. Amongst the prior art references submitted were U.S. Patent No. 3,987,334 to John Anderson ("the '334 patent"), U.S. Patent No. 3,500,118 to John Anderson ("the '118 patent"), and a 1969 article by John Anderson entitled "Electrodeless Fluorescent Lamps Excited by Solenoidal Electric Fields ("the 1969 SEF article") (collectively "the Anderson references").

19. Dr. Piejak testified that he believed the '334 patent, the '118 patent, and the 1969 SEF article to be the prior art that he considered most material to the '905 patent application.

20. Dr. Piejak testified that he believed the aforementioned Anderson references to be most material because they disclosed lamps that were very similar in structure and topology to the lamps of the '905 patent. The Court found this testimony to be credible.

21. Also submitted to the PTO were two references relating to the Philips QL lamp, namely an article by J. Schlejen entitled "Inductively Coupled Fluorescent Lamps: The QL Lighting System" (hereinafter "Schlejen"), and a 1991 article by A. Netten and C.M Verheij entitled "The Operating Principles of the Philips QL Lamp System" (hereinafter "Netten").

22. Dr. Piejak credibly testified that he believed that the Philips QL lamp was material to the '905 patent because the QL is an electrodeless induction lamp that generates a very high lumen output. Dr. Piejak believed that embodiments of the lamps disclosed in the '905 patent would achieve similarly high (or higher) lumen output. Therefore, he believed the QL prior art to be material due to the similarity in performance.

23. The Schlejen QL reference that was submitted to the PTO was undated.

24. AITI argued, in its opening statement and/or in its opposition to OSI's Rule 52(c) motion, that the Inventors committed inequitable conduct, in part, by intentionally submitting the undated Schlejen article in order to deceive the examiner.

25. The Court finds, however, that AITI presented no clear and convincing evidence that any of the Inventors knew that the Schlejen reference submitted to the PTO was undated.

26. AITI presented no clear and convincing evidence that any of the Inventors purposely submitted an undated version of the Schlejen reference with the specific intent to deceive the examiner.

27. The Court therefore finds no inequitable conduct with respect to any alleged failure to disclose information regarding the Philips QL lamp.

28. The Court finds that the submission of the aforementioned Anderson references, which were considered the closest prior art, along with the submission of two articles about the QL lamp, permit an inference that the Inventors were acting in good faith in an effort to comply with their duty of candor to the patent office.

5

1   29. Dr. Piejak credibly testified that he did not withhold any prior art from the PTO which he
2   believed to be material during prosecution of the '905 patent.

3   30. Dr. Piejak testified that, at the time that he was contemplating which prior art to submit in
4   connection with the '905 patent, he did not make any decisions with the intent to deceive the PTO.
5   (Trial Tr. 9/21/11, A.M. Session, 8:14-9:4). The Court credits Dr. Piejak's testimony in this regard, and
6   finds that AITI presented no no clear and convincing evidence to the contrary.

7   31. The Court finds that AITI presented no clear and convincing evidence that any of the
8   Inventors ever made a deliberate decision to withhold a reference that they knew to be material during
9   prosecution of the '905 patent.

10   32. The Court finds that AITI presented no clear and convincing evidence that any of the
11   Inventors ever acted with the specific intent to deceive the PTO during prosecution of the '905 patent.

12   **D. The Inventor Articles**

13   33. AITI argued, in its opening statement and/or in its opposition to OSI's Rule 52(c) motion,
14   that the Inventors committed inequitable conduct by intentionally withholding from the Patent Office
15   two of their own articles, specifically the Simple Analysis Article and the Electrical and Light
16   Characteristics Article (collectively "the Inventor Articles").

17   34. Dr. Piejak testified, however, that the Simple Analysis article (Trial Ex. 5) and the Electrical
18   and Light Characteristics article (Trial Ex. 55) disclose a modeling technique for determining certain
19   electrical characteristics in globular, re-entrant cavity, air core lamps. The lamps which were the subject
20   of the Inventors Articles were globular, re-entrant cavity lamps that used air cores, not ferrite cores.

21   35. Dr. Piejak credibly testified that he did not believe, and still does not believe, that the
22   Inventor Articles are material to the '905 patent because the modeling technique described therein is not
23   applicable to the closed-loop, tubular, external ferrite core type lamps of the '905 patent. Thus, Dr.
24   Piejak did not consider these articles to be material.

25   36. Dr. Piejak further testified, credibly, that he did not believe, and still does not believe, that
26   the Simple Analysis Article (Trial Exh. 5) is material to the '905 patent because certain of the equations
27   set forth therein are inapplicable to the closed-loop tubular, external ferrite core lamps of the '905
28   patent.

1    37. The Court credits Dr. Piejak's testimony, and finds that he did not believe or know the

2    Inventor Articles to be material to the patentability of the '905 patent claims.

3    38. The Court further finds that AITI failed to prove that the Inventor Articles were, in fact,

4    material to the patentability of the '905 patent.

5    39. AITI also presented deposition testimony of Inventors Godyak and Alexandrovitch regarding

6    the Inventor Articles. However, the Court finds that AITI presented no clear and convincing evidence

7    that any of the other Inventors believed or knew that the Inventor Articles were material to the

8    patentability of the '905 patent.

9    40. AITI argued that Dr. Piejak's testimony regarding the Inventor Articles should not be

10    believed. AITI contended that the 1992 Inventor Articles each disclosed electrodeless induction lamps

11    operating discharge currents in the ranges claimed in the '905 patent (i.e, equal to or greater than 2

12    amps). The Simple Analysis Article stated that its teachings were applicable to "any RF discharge." The

13    Electrical and Light Characteristics Article stated that its teachings were applicable to "any discharge

14    length." AITI argued that the Inventors' own statements regarding the importance of the Inventor

15    Articles and the references to the Simple Analysis Article in their own internal documents is

16    inconsistent with the Inventor testimony that they did not consider the Inventor Articles material to

17    patentability, and therefore constitutes evidence that the Inventors knew the Inventor Articles to be

18    material.

19    41. The Court finds AITI's argument unpersuasive. The Court does not find the references to the

20    Inventor Articles as set forth in internal OSI papers to be inconsistent with Dr. Piejak's testimony that

21    he did not believe the Inventor Articles to be material. The Court finds that, upon questioning by AITI's

22    counsel, Dr. Piejak offered reasonable explanations for why those references were made. The Court

23    credits Dr. Piejak's testimony in this regard. The Court also finds that while there is evidence that the

24    Simple Analysis Article provided the Inventors with information regarding basic principles of inductive

25    discharges, this does not render these Articles material, nor does it comprise clear and convincing proof

26    that the Inventors actually believed or knew these Articles to be material. As noted, the Court credits the

27    testimony of Dr. Piejak that the modeling technique of the Inventor Articles was not applicable to the

28

1 closed-loop tubular, external ferrite core lamps of the '905 patent. The references in the internal OSI

2 papers to the Inventor Articles are not inconsistent with this testimony.

3     42. The Court finds that AITI has failed to prove by clear and convincing evidence that the

4 Inventors believed or knew the Inventor Articles were material to patentability.

5     43. The Court further notes that AITI presented an expert witness, Mr. Edward Hammer, who

6 offered no testimony specific to the Inventor Articles, nor any testimony that the Court finds

7 significantly contradicts or otherwise cast doubt upon that of Dr. Piejak regarding the teachings of the

8 Inventor Articles.

9     45. AITI presented no clear and convincing evidence at trial that the Inventors, or any of them,

10 made a deliberate decision to withhold the Inventor Articles from the PTO for the specific purpose of

11 deceiving the examiner.

12     46. The Court finds that AITI failed to prove, by clear and convincing evidence, that any of the

13 Inventors made a deliberate decision to withhold the Inventor Articles with the specific intent to deceive

14 the patent examiner.

15     47. The Court therefore finds no inequitable conduct with regard to the nondisclosure of the

16 Inventor Articles.

17 **E. The Wharmby Article**

18     48. AITI argued, in its opening statement and/or in its opposition to OSI's Rule 52(c) motion,

19 that the Inventors committed inequitable conduct by failing to disclose the Wharmby article to the patent

20 examiner.

21     49. Dr. Piejak testified, however, that he did not submit the Wharmby article (Trial Ex. 15) to the

22 PTO during patent prosecution because he did not believe it was germane to the '905 patent.. Dr. Piejak

23 testified that he viewed Wharmby as a review article that did not teach how to make a high lumen output

24 lamp, such as those of the '905 patent.

25     50. The Court credits Dr. Piejak's testimony, and finds that he did not believe, and therefore did

26 not know, that the Wharmby Article was material to patentablity of the '905 patent claims.

27     51. AITI also presented deposition testimony of Inventors Godyak and Alexandrovitch regarding

28 the Wharmby Article. However, the Court finds that AITI presented no clear and convincingevidence

1   that any of the other Inventors believed or knew that the Wharmby Article was material to the

2   patentability of the '905 patent.

3        52. AITI presented no clear and convincing evidence at trial that the Inventors, or any of them,

4   made a deliberate decision to withhold the Wharmby article for the specific purpose of deceiving the

5   patent examiner.

6        53. The Court finds that AITI failed to provide clear and convincing evidence that any of the

7   Inventors made a deliberate decision to withhold the Wharmby article with the specific intent to deceive

8   the patent examiner.

9        54. The Court therefore finds no inequitable conduct with regard to the nondisclosure of the

10  Wharmby Article.

11  **F. <u>Title of the '905 Patent</u>**

12       55. AITI argued, in its opening statement and/or in its opposition to OSI's Rule 52(c) motion,

13  that the Inventors committed inequitable conduct by providing the '905 patent with a misleading title. In

14  particular, AITI alleged that the Inventors' use of the words "high intensity" in the '905 patent title was

15  selected intentionally to mislead the examiner by causing him to confuse the class of lamps claimed in

16  the '905 patent with another, different class of lamps known as High Intensity Discharge" or "HID"

17  lamps.

18       56. The title of the '905 patent is "High Intensity Electrodeless Low Pressure Light Source

19  Driven by a Transformer Core Arrangement." Dr. Piejak authored portions of the title, and chose the

20  words "high intensity" for use in the title.

21       57. Dr. Piejak testified that he used the words "high intensity" in the title to convey that the

22  lamps of the '905 patent would generate more lumens (higher light output) as compared to other low

23  pressure fluorescent lamps.

24       58. Dr. Piejak testified that he did not intend for the title of the '905 patent to be misleading.

25       59. The Court credits the testimony of Dr. Piejak in this regard. The Court finds that Dr. Piejak's

26  use of the words "high intensity" was reasonable in context, and the Court finds that Dr. Piejak did not

27  intend the title to be misleading.

28       60. The Court also finds that HID lamps were distinguished from the '905 patent lamps in the

9

"Background of the Art" section of the '905 patent, thus supporting the inference that there was no intent to confuse the examiner regarding HID lamps.

61. The Court further finds that AITI presented no clear and convincing evidence that the '905 patent title was, in fact, misleading or that the examiner of the '905 patent was confused or misled by the title.

62. AITI presented no clear and convincing evidence at trial that the '905 patent title was selected with the deliberate intent to deceive the patent office. AITI presented no evidence at all from which such a finding could be made.

63. The Court finds that AITI failed to provide clear and convincing evidence that Dr. Piejak or the other Inventors chose the title of the '905 patent with the specific intent to deceive the patent examiner.

64. The Court therefore finds no inequitable conduct with regard to the selection of the '905 patent's title.

**G. "Straw Man" Reference**

65. AITI argued, in its in its opening statement and/or in its opposition to OSI's Rule 52(c) motion, that the Inventors submitted U.S. Patent No 4,180,763 ("the '763 patent") to the PTO as a prior art reference for the purpose of misleading the examiner.

66. The '763 patent is directed to High Intensity Discharge ("HID") lamps, which are generally considered a different class of lamps from the low pressure type lamps of the '905 patent. AITI alleged - in conjunction with its "misleading title" argument – that submission of the '763 patent was deliberately intended as a "straw man" reference to confuse the examiner and mislead him as to the type of lamp claimed in the '905 patent, thereby distracting the examiner from applying the proper prior art.

67. AITI presented no clear and convincing evidence that the '763 patent was submitted to the PTO by or at the request of the Inventors. To the contrary, Dr. Piejak testified that he did not submit the '763 patent, and the Court credits Dr. Piejak's testimony in this regard. There was no clear and convincing evidence at trial that any of the other Inventors submitted the '763 patent, knew that the '763 patent had been submitted, knew what the '763 patent taught, or were otherwise responsible for causing the '763 patent to be provided to the examiner.

68. Moreover, AITI presented no clear and convincing evidence that the '763 patent actually misled the patent examiner.

69. AITI presented no clear and convincing evidence that the Inventors submitted the '763 patent to the examiner as part of a deliberate plan to deceive the examiner.

70. The Court finds that AITI failed to prove, by clear and convincing evidence, that any of the Inventors submitted the '763 patent as a prior art reference with the specific intent to deceive the PTO .

71. The Court therefore finds no inequitable conduct based upon the submission of the '763 patent during the '905 patent prosecution.

**H. Allegedly Misleading Statements to the PTO**

72. AITI argued, in its opening statement and/or in its opposition to OSI's Rule 52(c) motion, that the Inventors made multiple allegedly untrue or otherwise misleading statements during prosecution of the '905 patent, all with the alleged intent to deceive the examiner.

73. During trial, however, AITI failed to present evidence as to specific statements from the '905 patent prosecution history that were allegedly false or misleading. Notably, AITI presented an expert witness, Mr. Edward Hammer, who offered no testimony about the '905 patent file history.

74. The Court finds that AITI presented no clear and convincing evidence that any of the Inventors authored or were aware of any of the statements or arguments for patentability asserted by OSI's patent counsel during prosecution. Dr. Piejak testified that while he and the other Inventors reviewed and approved of the contents of the '905 patent application, he neither authored nor was aware of the subsequent statements made to the examiner during the '905 patent prosecution.. There was no evidence presented that the other Inventors authored or were aware of those statements either.

75. AITI presented no clear and convincing evidence that any statements made during prosecution of the '905 patent were inaccurate or misleading.

76. The Court finds that AITI presented no clear and convincing evidence that any of the Inventors made or contributed to any statements or arguments during prosecution of the '905 patent at all, let alone with the specific intent to deceive the PTO. AITI presented no evidence at all from which such a finding could be made.

77. The Court therefore finds no inequitable conduct based upon any allegedly false or

1    misleading statements made to the patent examiner during the '905 patent prosecution.

2    **I. Best Mode**

3    78. AITI argued, in its opening statement and in its opposition to OSI's Rule 52(c) motion, that

4    the Inventors purposefully concealed certain alleged best modes of the '905 patent from the PTO,

5    namely an electronic ballast for powering the lamp and an amalgam for dosing the lamp with mercury.

6    79. The Court finds that AITI presented no clear and convincing evidence that the Inventors

7    intentionally concealed any best modes of the '905 patent from the PTO.

8    80. AITI failed to prove by clear and convincing evidence that a best mode ballast existed or was

9    known to the Inventors as of the '905 patent filing date. The Court acknowledges Inventor Godyak's

10   deposition testimony regarding the alleged "special ballast" but finds that testimony too ambiguous to

11   support a finding by clear and convincing evidence that Dr. Godyak or the other Inventors knew of a

12   best mode ballast as of the '905 patent filing date.

13   81. AITI presented no clear and convincing evidence that the Inventors knew of a best mode

14   ballast as of the '905 patent filing date and yet deliberately failed to disclose it to the patent examiner for

15   the specific purpose of deceiving the PTO.

16   82. AITI also failed to prove by clear and convincing evidence that the Inventors failed to

17   disclose use of an amalgam to the patent office during the '905 patent prosecution with a specific intent

18   to deceive the examiner.

19   83. The Court finds that AITI failed to prove by clear and convincing evidence that the Inventors

20   intentionally concealed any best modes of the '905 patent from the PTO with the specific intent to

21   deceive the PTO.

22   84. The Court therefore finds no inequitable conduct based upon any alleged failure to disclose

23   any best modes during the '905 patent prosecution.

24   **J. Additional Findings of Fact**

25   85. As set forth below, to prove an intent to deceive AITI must prove by clear and convincing

26   evidence that the Inventors (1) knew of the allegedly withheld references, (2) knew them to be material,

27   and (3) made a deliberate decision to withhold them for the specific purpose of deceiving the patent

28   office.

86. Here, it bears particular note that AITI presented this Court with essentially no evidence from which the final prong – specific and deliberate intent to deceive – could be found. Intent may be inferred from the circumstantial evidence. In this case, however, AITI has presented the Court with certainly no clear and convincing evidence, from which a specific intent to deceive the patent office is even a reasonable inference, let alone the single most reasonable inference. In short, the Court finds a wholesale lack of evidence to support a finding that the Inventors ever acted with a specific, deliberate intent to deceive the patent office during prosecution of the '905 patent.

87. The Court finds that AITI presented no clear and convincing evidence that any of the Inventors ever made a deliberate decision to withhold a reference that they knew to be material during prosecution of the '905 patent.

88. The Court finds that AITI presented no clear and convincing evidence that any of the Inventors acted with the specific intent to deceive the PTO during prosecution of the '905 patent.

89. The Court finds that a specific intent to deceive the PTO on the part of the Inventors is not the single most reasonable inference able to be drawn from the evidence.

90. The Court finds that there are multiple reasonable inferences that may be drawn based on the evidence, including that the Inventors acted in good faith throughout the prosecution of the '905 patent to comply with their duty of candor to the PTO.

91. The Court finds that the AITI has failed to prove by clear and convincing evidence that the Inventors, or any of them, committed inequitable conduct during prosecution of the '905 patent.

92. The Court finds that AITI has not proven by clear and convincing evidence that the '905 patent is unenforceable due to the inventors' inequitable conduct.

## II. CONCLUSIONS OF LAW

1. AITI bears the burden of proving inequitable conduct. To do so it must present clear and convincing evidence that a specific individual with a duty of disclosure to the PTO both knew of material information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO." *Therasense v. Becton Dickinson and Co.*, 649 F.3d. 1276, 2011 WL 2028255, *9-11 (Fed. Cir. May 25, 2011), *see also Delano Farms Co. v. California Table Grape Com'n*, --- F.3d ----, 2011 WL 3689247, *10 (Fed. Cir. 2011) (emphasis added).

2. Materiality and intent are distinct elements, and the alleged infringer must prove both by clear and convincing evidence. They are separate and independent inquiries. *Therasense*, at *10.

3. Intent may not be inferred solely from materiality, and the Court may not use a "sliding scale," where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa. Rather, evidence of intent to deceive must be weighed independently of its analysis of materiality. *Id.*

**A. <u>Intent To Deceive</u>**

4. To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO. *Id.* at *9.

5. A finding that the misrepresentation or omission amounts to gross negligence or negligence under a "should have known" standard does not satisfy this intent requirement. *Id.*

6. "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference." *Id.* (emphasis in original).

7. The accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it. *Id.*

8. Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive. The fact that information later found material was not disclosed cannot, by itself, satisfy the deceptive intent element of inequitable. *Id.*

9. Intent to deceive may be inferred from indirect and circumstantial evidence. However, to meet the clear and convincing evidence standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence. Indeed, the evidence "must be sufficient to require a finding of deceitful intent in the light of all the circumstances." *Id.* (emphasis in original). See also Cordis Corp. v. Boston Scientific Corp., ---F.3d---, 2011 WL 4470563, *10 (Fed. Cir. September 28, 2011) (affirming finding of no inequitable conduct where "the evidence does not unequivocally demonstrate specific intent to deceive.") (emphasis added).

10. When there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found. *Id.*

11. "Wholly inadvertent errors or honest mistakes," or even "gross negligence" do not satisfy the requisite level of intent. *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 166 (Fed. Cir. 1985); *Therasense*, at *9.

12. "It is not inequitable conduct to omit telling the patent examiner information that the applicant in good faith believes is not material to patentability." *Allied Colloids Inc. v. Am. Cyanimid Co.*, 64 F.3d 1570, 1578 (Fed. Cir. 1995).

13. An inequitable conduct claim fails unless the party asserting it can establish that a particular individual with a duty of disclosure to the PTO acted with deceptive intent. *Nordberg, Inc. v. Telsmith, Inc.*, 82 F.3d 394, 397 (Fed. Cir. 1996); *see also Delano Farms Co. v. California Table Grape Com'n*, --- F.3d----, 2011 WL 3689247, *10 (Fed. Cir. 2011).

14. The law does not permit an inference of intent based on combining the partial knowledge of two or more different individuals. *See FMC Corp. v. Hennessy Indus.*, 836 F.2d 521, 525 (Fed. Cir. 1987) ("That FMC alleges inequitable conduct against a great number of people does not diminish the burden of proof which it must meet as to each of them.")

15. A claim of inequitable conduct cannot be sustained based on a theory of corporate wrongdoing. *Syntex LLC v. Apotex, Inc.*, No. 01-2214-MJJ, 2003 U.S. Dist. LEXIS 26489, at *98-101 (N.D. Cal. Dec. 29, 2003), rev'd in part on other grounds, 407 F.3d 1371 (Fed. Cir. 2005).

16. "When determining whether intent has been shown, a court must weigh all evidence, including evidence of good faith." *Purdue Pharma L.P. v. Endo Pharms. Inc.*, 438 F.3d 1123, 1134 (Fed. Cir. 2006).

17. "A showing of subjective good faith militates against a finding of intent to deceived." *Eli Lilly & Co. v. Zenith Goldline Pharms.*, 364 F. Supp. 2d 820, 916 (S.D. Ind. 2005).

18. Disclosure of close prior art to the PTO is evidence of good faith. *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1581 (Fed. Cir. 1997).

19. AITI has failed to carry its burden of proof, by clear and convincing evidence, that any of the inventors of the '905 patent intended to deceive the PTO during prosecution of the '905 patent

15

1  application. Therefore, the Court concludes, as a matter of law, that AITI's counterclaim fails and there

2  is no inequitable conduct with respect to the '905 patent.

3  **B. Materiality**

4      20. "The materiality required to establish inequitable conduct is but-for materiality. When an

5  applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not

6  have allowed a claim had it been aware of the undisclosed prior art. Hence, in assessing the materiality

7  of a withheld reference, the court must determine whether the PTO would have allowed the claim if it

8  had been aware of the undisclosed reference." *Therasense*, at* 11.

9      21. Information cannot be material if it is cumulative or less relevant of other information

10 already disclosed to the PTO." *See Oracle Corp. v. DrugLogic, Inc.*, 2011 WL 3443889, *12 (N.D. Cal.

11 August 08, 2011); *see also Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1367 (Fed.

12 Cir. 2008). Information is cumulative if it teaches no more than what a reasonable examiner would

13 consider to be taught by the prior art already of record before the PTO. *See, e.g., Regents of the Univ. of*

14 *California v. Eli Lilly & Co.*, 119 F.3d 1559, 1574-75 (Fed. Cir. 1997).

15     22. The accused infringer bears the burden of proving that the asserted references are not merely

16 cumulative of the prior art that was before the examiner. *See Intermec Technologies Corp. v. Palm Inc.*,

17 738 F.Supp.2d 522, 561 (D. Del. 2010) ("The burden to show that non-disclosed prior art was

18 cumulative, however, cannot be shifted to [the patentee].")

19     23. AITI failed to prove that the Inventor Articles, or either of them, are material to the

20 patentability of the '905 patent.

21 **C. Additional Applicable Law**

22     24. "An inventor's opinions regarding a prior art device known to the examiner are not within

23 the domain of material that must be submitted to the PTO." *Mentor H/S, Inc. v. Medical Device*

24 *Alliance, Inc.*, 244 F.3d 1365, 1378 (Fed. Cir. 2001); *see also Advanced Ion Beam Tech., Inc. v. Varian*

25 *Semiconductor Equip. Assoc., Inc.*, 721 F.Supp.2d 62, 76 (D. Mass. 2010).

26     25. To prove a best mode violation, the defendant must provide clear and convincing evidence

27 that, at the time the application for patent was filed, the inventor both knew of and concealed a better

28

16

1  mode of carrying out the claimed invention than that set forth in the specification. *Teleflex, Inc. v.*
2  *Ficosa N. Am. Corp.*, 299 F.3d 1313, 1330 (Fed. Cir. 2002).

3      26. An inventor need only disclose information about the best mode that would not have been
4  apparent to one of ordinary skill in the art. *Young Dental Mfg. Co. v. Q3 Special Prods., Inc.*, 112 F.3d
5  1137, 1144 (Fed.Cir.1997). "The best mode requirement of § 112 is not violated by unintentional
6  omission of information that would be readily known to persons in the field of the invention." *See also*
7  *High Concrete Structures, Inc. v. New Enter. Stone & Lime Co.*, 377 F.3d 1379, 1383 (Fed.Cir. 2004).

8      27. In order for a best mode violation (if it occurred) to serve as the basis for a finding of
9  inequitable conduct, there must be some added culpable conduct, such as disclosing a fictitious mode
10  instead of the best mode. *Engel Industries, Inc., v. The Lockformer Co.*, 946 F.2d 1528, 1533
11  (Fed.Cir.1991).

12      28. AITI failed to prove by clear and convincing evidence that the Inventors of the '905 patent
13  failed to disclose a best mode of the '905 patent under 35 U.S.C. § 112, engaged in any culpable conduct
14  relating to the best mode (such as disclosing a fictitious mode), or intended to deceive the PTO by
15  withholding a best mode.

16                          **III. <u>CONCLUSION</u>**

17      For the aforementioned reasons, the Court concludes that AITI has failed to meet its burden of
18  proving that any of the Inventors committed inequitable conduct, or that the '905 patent is unenforceable
19  on the basis of inequitable conduct.
20  DATED: October 28, 2011.
21                          _____
22                              MANUEL L. REAL
                            UNITED STATES DISTRICT JUDGE
23
24
25
26
27
28